[No. 40301. Department Two. January 9, 1969.]

*In the Matter of the Adoption of* INFANT GIRL GARAY, *an Infant.* CHARLES HENRY SCHMIDT *et al., Petitioners,* v. RICHARD E. GRANT *et al., Respondents.**

*Critchlow, Williams & Ryals* and *David E. Williams,* for petitioners.

*Mucklestone & Mucklestone, John P. Mucklestone,* and *Patricia J. Mucklestone,* for respondents.

WEAVER, J.—Charles H. and Catherine F. Schmidt, husband and wife, who reside in Benton County, seek review by writ of certiorari of a decree of adoption, pursuant to Rule on Appeal 57(b)(2), RCW vol. 0. Under the decree,

*Reported in 449 P.2d 696.

Richard E. and Phyllis J. Grant, husband and wife, residing in King County, were declared to be the adoptive parents of the infant girl Garay, whose name was changed to Kathyleen Rosetta Grant.

The infant Garay, born February 9, 1965, is of Mexican descent.

April 9, 1965, the Superior Court for Franklin County deprived her mother of all parental and legal rights. The order of deprivation made the child a permanent ward of the superior court and placed her in the care, custody, and control of Paul H. Schlagel, chief juvenile probation officer of Franklin County, and "under the supervision of the State Department of Public Assistance for foster care and/or adoptive placement." The order also designated Mr. Schlagel as

> the person authorized to consent to the adoption of said child at such time as a proper, suitable and competent showing on a Petition for Adoption of said child is brought on for hearing before any Superior Court of the State of Washington.

At the time of trial on March 26, 1968, Mr. Schmidt was 52 years of age; Mrs. Schmidt was 48. Mr. Schmidt has two children by a former marriage; Mrs. Schmidt one. These children are now married. Mr. and Mrs. Schmidt have four children, issue of their marriage, living at home. The oldest is 17; the youngest is 8.

For approximately 4 years prior to trial of the instant case, the Schmidts have acted as foster parents, on a temporary basis, to 24 children under the direction of the State Department of Public Assistance.

The record supports the conclusion that Mr. and Mrs. Schmidt were knowledgeable of the foster-home program in this state as an alternative to institutional care for minors, pending their permanent placement with adoptive parents, and that foster home placements are temporary and transitory. See *In re Reinius,* 55 Wn.2d 117, 128, 346 P.2d 672 (1959).

The Schmidts cared for the child well; they nursed her back to health after three major surgical operations.

186

Through the Minority Adoption Project sponsored by Medina Children's Service, an approved adoption agency, the Grants learned of the possibility of their adopting a child. In December, 1967, after thorough investigation by the agencies, the Grants were approved as adoptive parents and their home determined to be suitable and proper.

In accordance with the plan of adoption developed by the Medina Children's Service, the State Department of Public Assistance, pursuant to the 1965 order of deprivation of the superior court, placed the child in the home of the Grants on January 13, 1968. She has lived with them in King County since then.

The record supports the trial court's finding that the Schmidts

> as the foster parents of the subject minor child acquiesced and cooperated with the adoptive placement and planning of the State Department of Public Assistance for the subject minor child; and that said foster parents did not indicate or express a desire to adopt said child until her adoptive placement program was well under way.

January 18, 1968, the Grants filed their petition for adoption in King County. The petitioners were residents of King County; the minor to be adopted was domiciled in King County. Filing of the petition was in accordance with RCW 26.32.020, which provides:

> [A]ny husband and wife jointly . . . may petition the superior court of the county in which the *petitioner* is a resident, or of the county in which the person to be adopted is *domiciled,* for leave to adopt, and to change the name, if desired, of any person. (Italics ours.)

The same day—January 18, 1968—the Schmidts filed a petition for adoption in Benton County. Their petition came on for hearing before the first Benton County judge February 29, 1968. Although no notice had been given the Grants (with whom the minor was domiciled), as required by RCW 26.32.080,[1] it appears that counsel for the Medina

---

[1] "The court shall direct notice of any hearing . . . to any person or association having the actual care, custody, or control of the child: . . . ." (RCW 26.32.080(1)).

Children's Service was present. The Department of Public Assistance was represented by an assistant attorney general.

Counsel for the department moved to dismiss the Schmidts' petition because (a) proper statutory notice had not been given to the Grants; (b) no consent to the adoption by the person authorized to give the consent had been filed; and (c) the Grants' petition was pending in King County.

After extended argument, the first trial judge concluded that he did not have jurisdiction. The matter was continued for further noting.

March 15, 1968, a second Benton County judge recommended that the two petitions for adoption be consolidated and considered in one hearing in Benton County before a King County judge.

The scene shifts to King County.

March 12, 1968, Paul Schlagel, the probation officer, executed his consent to the Grants' petition filed in King County. The Grants' petition was noted for hearing on March 21. Having been advised of the Benton County proceeding, the first King County judge continued the hearing until March 26 and directed that notice be given to the Schmidts.

March 22, the Schmidts filed their motion in King County requesting consolidation of the two petitions for adoption and transfer to Benton County for hearing. The motion was noted for March 26 also.

March 25, the Schmidts filed their complaint in intervention in King County pursuant to an order authorized by a second King County judge.

March 26, the Grants' petition for adoption and the Schmidts' complaint in intervention came on for trial before a third King County judge. The trial court found that the Schmidts "have been joined as intervenors in this proceeding and stand before this court as parties to this proceeding." The Schmidts were permitted to present their evidence.

The trial court found that the Grants were proper and acceptable adoptive parents; that the proper social agencies had approved the adoption; that Paul H. Schlagel, by giving his consent to the adoption by the Grants, had "made a wise and proper determination for the welfare of the subject child placed in his custody"; that his consent was reasonable and not arbitrary; and that having given consent to the adoption by the Grants he could not consent to adoption by the Schmidts. Determining that the best interest of the child would be served, the court decreed Mr. and Mrs. Grant to be the adoptive parents. From this decree, intervenors, the Schmidts, appeal.

Basically, the Schmidts' assignments of error fall into two categories.

*First*: We find no error in the Schmidts' assignments directed to the court's findings of fact. The record sustains the facts found by the court and as we have set them forth.

■ *Second*: The Schmidts contend that the court erred when it refused to consolidate the King and Benton County petitions for adoption and to transfer them to Benton County for trial. The fundamental weakness of the Schmidts' contention is that they did not have the statutory consent of Mr. Schlagel, the probation officer who had been designated as the "person authorized to consent to the adoption of said child." No attempt had been made to dispense with the statutory requirement of consent. See RCW 26.32.030 (5). Consolidation and transfer to Benton County would have accomplished nothing. The refusal to consolidate and have the case heard in Benton County was not error, for there is nothing in the record to sustain the contention that Mr. Schlagel's consent was arbitrary or unreasonably withheld; nor were there any facts that would have justified the court in dispensing with his consent as permitted by statute in certain circumstances.

As intervenors, the Schmidts had a fair and complete hearing before the King County court, regardless of whether their motion to consolidate was formally granted. The court considered all the evidence and found that the

best interests of the child would be served by her adoption by the Grants, who had complied with all the required statutory procedures. The record supports the decision.

The judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and WILLIAMS, J. Pro Tem., concur.

---

February 20, 1969. Petition for rehearing denied.